## James M. Miller et al., Appellants, v. Joseph H. Arm= strong, Appellee.

1. PLEADING—*when answer in chancery considered as evidence.* If the answer under oath be not waived and a sworn answer is interposed it is to be considered as evidence and to overcome such answer the testimony of two witnesses or the equivalent is required, but this rule does not apply with respect to conclusions and indirect answers contained in such a pleading. The answer to have the weight above must be squarely responsive to the allegations of the bill.

2. MORTGAGES—*when absolute deed constructive.* Held, under the evidence that the deed in question in this case was given as and should be held to be a mortgage.

Bill in chancery. Appeal from the Circuit Court of Bond county; the HON. GEORGE A. CROW, Judge, presiding. Heard in this court at the October term, 1911. Affirmed. Opinion filed March 21, 1912.

J. H. ALLIO and ALBERT & MATHENY, for appellant.

C. E. HOILES, C. E. COOK and D. R. KINDER, for appellee.

MR. JUSTICE MCBRIDE delivered the opinion of the court.

This was a bill in chancery filed to redeem from an alleged mortgage upon which a decree was rendered in favor of the complainant and the defendant prosecutes this appeal.

On December 1, 1905, Herschel Donaldson, executed a warranty deed to James M. Miller conveying the east half of the southeast quarter of the southwest quarter of section 2, township five north, range three west of the third principal meridian, except one acre off of the north end thereof, situated in the county of Bond in the State of Illinois, for an express consideration of $1800. On the same day James M. Miller executed and delivered to Donaldson a lease upon said

land for a period of three years, providing for a payment as rent therefor the sum of $168, payable $28 on the first day of June, 1906, and $28 on the first day of December, and a like amount on the first days of June and December during the continuance of the lease, and Donaldson was to pay all taxes against said land and keep the same in repair. Said lease also contained the following provision:

"And it is further covenanted and agreed between the parties aforesaid that the above named premises shall not be sublet without written permission of the owner, and that on compliance with all the covenants of this lease and the payment of the further sum of eight hundred dollars by party of the second part to party of the first part during the continuance of this lease party of the first part agrees to make deed conveying all his interest in said real estate to party of the second part at expense of party of second part."

On July 31, 1906, the said Herschel Donaldson sold and conveyed by deed of warranty the said land to one John L. Bunch, which deed contains a recital that it is subject to a deed executed by the grantor to James M. Miller that was made to secure a sum of money borrowed by the said Donaldson from the said Miller, which lease and agreement was on the same day duly signed by the said Herschel Donaldson to the said John L. Bunch. On February 11, 1910, the said John L. Bunch and wife executed a warranty deed for said lands to the complainant Joseph H. Armstrong for an express consideration of $1900; said Armstrong "to assume an indebtedness of eight hundred dollars on said land as shown of record in Book 49 at page 198 of the records of Bond County, Illinois," wherein reference is made to a certain lease with a purchase clause, and on the back of the said lease was placed the following endorsement, "Assigned to Joseph H. Armstrong,

JOHN L. BUNCH."

Donaldson continued in the possession of this land until the sale made by him to Bunch; Bunch then continued in the possession until the sale made by him to Armstrong and Armstrong continued in possession up to the hearing of this cause.

The bill was filed herein on March 11, 1910. The bill sets out the several conveyances above mentioned, including the said lease and contract, and then alleges that the said lease and contract given in connection with the said deed was given as security for the payment of $800 and interest then borrowed by the said Donaldson from the said Miller, and the bill contains the following allegation:

"Your orator further represents that the said deed of conveyance and the said lease although appearing to be absolute on their face were not intended to be such by the said Herschel Donaldson and the said James M. Miller but on the contrary it was expressly agreed and understood between them that the same and the said premises thereby conveyed were to be held by the said James M. Miller merely as security for the payment of the said sum of money and interest as aforesaid; and that upon the payment of that sum and interest to the said James M. Miller the said James M. Miller would re-convey the said premises to the said Herschel Donaldson or his assigns by an absolute deed."

The bill further alleges that all the interest due upon the said sum of $800 had been fully paid up to December 1, 1909, and that on the second of March, 1910, the complainant tendered to the said Miller the sum of $814.35, being the principal and interest of said indebtedness, and also the sum of five dollars expense of re-conveying, and demanded of the said Miller a deed re-conveying the said premises but that the said Miller refused to receive the said money and refused to re-convey. The bill not having waived the oath the defendant Miller answered it under oath, and admits that the said Donaldson conveyed the said premises

to him in fee "but the defendant denies that the transaction was intended to be a mortgage or to secure a pre-existing debt; the defendant further states that said transaction was intended to be and became a valid purchase and was not intended to secure a debt;" and further avers that he leased said premises to the said Donaldson for a term of three years with an option of purchase according to the terms provided in said lease, and avers that the said Donaldson did not execute the said deed of conveyance as security for the repayment of said sum of money with interest, as charged in the bill, but that the $800 was given in consideration of the absolute purchase of the said premises, and that the said deed was not intended as mere security for the said sum of money and interest as mentioned in said bill. To this a replication was filed.

The case was heard and determined upon the issues as above made and a decree rendered for the complainant. Counsel for appellant insist that as the answer of the defendant was under oath that to overcome such answer will require the testimony of two witnesses, or the equivalent. There would be much force in this contention if the answer had been squarely responsive in material matters to the allegations of the bill. The bill alleges, "But on the contrary it was expressly agreed and understood between them that the same and the said premises thereby conveyed were to be held by the said James M. Miller merely as security for the payment of the said sum of money and interest as aforesaid." It will be noted that by this allegation the bill claims there was an express agreement but the answer nowhere denies that there was such an agreement except that it denies that it was intended as a mortgage, but the denials are conclusions and not direct answers to the allegations of the bill, and under the authorities, the answer to have the weight sought to be given to it in this case must be squarely respon-

sive to the allegations of the bill. Cummins v. Cummins, 15 Ill. 33; Cissna v. Walters, 100 Ill. 623.

But allowing this question the force and scope contended for by counsel for appellant, we cannot say that the chancellor erred in the conclusion reached by him, as there are many facts and circumstances that clearly sustain his view in this case.

It appears from the evidence that prior to the time Donaldson made the deed to Miller he was seeking a loan of $800 and that when George L. Myers went with Donaldson to Miller's office that Donaldson then offered the land to Miller for $1900; Miller thought the price was too high. Donaldson then applied for a loan of $800 and Miller at first said he would not make it but said "he would see," and Myers explained to Donaldson there in Miller's presence, that he, Donaldson, would have to take a lease from Miller with a purchasing clause in it as that was the way Mr. Miller was loaning money, and the witness Myers on cross-examination stated, "And Miller said he might take a deed and put in a purchasing clause in the lease that would be given back." While Bunch was the owner of the land he offered to pay Miller the $800 and interest up to that time but Miller wanted the interest up to the end of the term before he would make a deed or release his lien, and then when it was offered to him he insisted that the money must come from Donaldson.

The evidence shows the rental value of this land to have been at that time about four dollars per acre, while the rent provided for in the lease was only fifty-six dollars, or just seven per cent upon the amount of money paid to Donaldson by Miller. It is true that Miller claimed that the land at the time the deed was executed to him was worth only $800 but the evidence is overwhelming that the land at that time was worth from fifteen hundred to eighteen hundred dollars; Bunch purchased it, shortly after, for $1500, and still

later on sold it to Armstrong for $1900. It would be remarkable that a man being possessed of land worth at least $1500 would sell it for $800 and then continue in the possession of it, treat it as his own, the grantee in the deed giving it no attention whatever (as Miller failed to do in this case), that such a transaction would be intended as an absolute sale of the property.

Many authorities have been cited by counsel for appellant and appellee in support of their respective positions, and while these authorities are many of them at variance they all leave the question, in a case of this character, to depend upon the intention of the parties at the time of the making of the deed. If it was then understood, agreed or intended to be a mortgage it always remained a mortgage and the right of redemption would exist, and the sole question in this case is, what was the intention of the parties at the time of the transaction, and has been so treated by counsel for appellant and appellee.

We have carefully examined all the testimony in this case and when we come to consider that Donaldson was embarrassed; that Miller stated that he might take a deed and give a contract back; that Miller had made other loans in this manner; that the value of the land was far in excess of the money paid; that Donaldson and his grantees treated this land as their own; that Miller paid no attention to it, and had spoken of his rights as that of a lien holder, we are forced to the conclusion that the instrument in question was intended as a mortgage. We are of the opinion that the Circuit Court in its decision is fully sustained by the cases of Preschbaker v. Freaman et al., 32 Ill. 475; Rubo v. Bennett, 85 Ill. App. 473; Lane v. Beitz et al., 99 Ill. App. 342; Halbert v. Turner, 233 Ill. 531.

Viewing the facts as we do we are of the opinion that the Circuit Court did not err in holding that the

$800 given by Miller to Donaldson was in the nature of a loan, and the papers executed were intended by the parties as security in the nature of a mortgage, and the decree of the Circuit Court will be affirmed.

*Affirmed.*